499 So.2d 428 (1986)
Alton R. JOSEPH, Credell Buckner Dominguez, Individually and as Administratrix of the Estate of Her Minor Children, Tonel Dominguez and Rahsaanica Joseph
v.
FORD MOTOR COMPANY.
No. CA-2999.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1986.
Rehearing Denied January 15, 1987.
Writ Granted March 13, 1987.
*429 Dermot S. McGlinchey, McGlinchey, Stafford, Mintz, Cellini & Lang, PC, New Orleans, for appellant.
Lawrence D. Wiedemann, W. Lloyd Bowers, Wiedemann & Fransen, New Orleans, for appellees.
Before GULOTTA, KLEES and CIACCIO, JJ.
CIACCIO, Judge.
We consider this matter on remand from the Louisiana Supreme Court. 483 So.2d 934. The only issue is whether the award for damages is excessive. We find the award excessive, and therefore, reduce the award to the highest reasonable amount.
Plaintiff was injured when he lost control of his new van because the braking system was defective. The van crashed into a concrete bridge support. Plaintiff brought an action in redhibition and an action in tort.
After the accident plaintiff was taken to Charity Hospital where he was treated and released. No one involved in the accident was admitted to the hospital. Plaintiff returned home, apparently suffering only from being emotionally shaken.
The next morning when plaintiff awakened, however, he found that his leg was numb. Two or three days later plaintiff consulted his family physician who suggested that he see an orthopedist or a neurosurgeon. Plaintiff consulted an orthopedic surgeon who examined him, including taking x-rays, and referred him to a neurosurgeon. The neurosurgeon also *430 examined plaintiff, conducting certain tests. These two doctors found negative results from their tests and examinations. Any further testing would require hospitalization, which the doctors thought was unnecessary. Plaintiff was given some medication and told that he would probably be alright since the tests were negative.
Plaintiff continued to experience difficulty and a friend referred him to another neurosurgeon. This new neurosurgeon performed a myelogram and a diskogram, and determined that plaintiff had a ruptured disk. The doctor attempted traction and alternate medications as his initial treatment of plaintiff, but without results. The doctor recommended surgery. Ultimately he performed a double laminectomy at levels L4-L5, L5-S1.
After surgery plaintiff's condition was improved. After a period of convalescence plaintiff's doctor recommended that he try swimming as a suitable form of exercise. When plaintiff tried to swim, however, his back gave out again.
Plaintiff was admitted to the hospital and an orthopedist was consulted. The orthopedist had plaintiff undergo physical therapy, and he conducted additional diagnostic tests. The doctor fitted plaintiff with a back brace to which plaintiff did not adjust well and consequently did not find helpful. The orthopedist recommended that plaintiff undergo a spinal fusion, but indicated that this surgical intervention still may not relieve plaintiff's pain.
The orthopedist testified that plaintiff is unemployable because of his disability. His opinion was supported by an occupational therapist and vocational rehabilitationist.
Plaintiff's psychiatrist testified that plaintiff suffers from post-traumatic stress disorder and depression. Plaintiff's friends and relatives testified concerning the adverse change to both his physical and mental condition as a result of the accident.
In a lump sum award the jury assessed plaintiff's damages at $1,700,000. The jury also awarded plaintiff a return of the purchase price of the van, and as attorneys' fees in the redhibition action, $187,000. Return of the purchase price of the van is not at issue.
Plaintiff had purchased the van and used it prior to the accident to run a transportation service for young children, to take them from home to school and back. He began this activity because a neighbor who ran a day care center could no longer transport the children herself and she asked plaintiff if he wanted to take over. Prior to this activity plaintiff was not employed at any particular job and was most of the time unemployed.
From the accident until trial plaintiff could not work. His general physical activities were greatly curtailed: he no longer actively participated in sports or played with his children or the other children in the community with whom he had previously been very involved. Although he continued his community involvement, physically he was limited by the injury to his back.
Plaintiff also suffered emotionally. Because of the physical pain and limitations plaintiff's emotional stature deteriorated, straining his personal relationships. Plaintiff sought counseling which was helping him overcome his distress and anxiety.
The evidence in the record supports two basic components of plaintiff's damages: lost income because he is "unemployable" and general damages because of his physical pain and suffering and his mental anguish. Appellant cites many cases in an attempt to establish an acceptable range for an award. Each case is different, however, and the amount of the award should be determined by the facts or circumstances peculiar to the case under consideration. The scope of appellate review is limited to lowering (raising) the award to the highest (lowest) point which, based on the particular facts of the case, is within the trial court's reasonable discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
Plaintiff presented expert testimony to establish his lost income. The expert initially calculated lost income on the basis of *431 the future expansion of plaintiff's transportation service to involve three vans, and the opening by plaintiff and his girlfriend of a nursery school. Consideration of these possibly profit-generating, future activities is highly speculative, and under the circumstances of this case unacceptable as a basis for an award.
Prior to operating his bus route, plaintiff had been many years unemployed. At the time of the accident he had been operating the bus route for approximately six months. He initially did not own a van, but then purchased his ownthe defective one which caused his injuries. Although plaintiff had revealed his hopes for expansion, the evidence at trial did not establish these hopes as anything more than ideas far from fruition.
Even if plaintiff expanded his operation to involve three vans, he would not be driving all three vans. As a result of the accident plaintiff would be prevented only from being one of the van drivers. He would not be disabled from overseeing the operation of the service. The only economic disadvantage then, would be the salary of one additional driver, a driver to replace plaintiff.
Plaintiff's only economic loss for which the record contains adequate proof is the discontinuation of the bus route as it was operating prior to the accident. Although uncorroborated by any kind of evidence, plaintiff testified that prior to the accident his gross income from the bus route was a maximum $550 per week. Out of this amount plaintiff presumably paid the expenses of the operation which at a minimum must have included paying for the van, insurance, gasoline, and taxes. We find that an award of $185,000 is the highest reasonable amount which adequately compensates plaintiff for this loss.
The nature and extent of plaintiff's physical pain and suffering and his mental anguish has been described above. We find that an award of $350,000 is the highest reasonable amount which adequately compensates plaintiff for these damages. We, therefore, amend that portion of the judgment awarding plaintiff $1,700,000.00 for his damages and reduce that amount to a judgment in favor of the plaintiff for a total amount of $535,000.00.
We also find excessive the attorneys' fees award of $187,000. Attorneys' fees are recoverable in the redhibition action only. They are made recoverable under La.C.C. Art. 2545 against both the manufacturer and the retail seller. See Lafleur v. John Deere Co., 491 So.2d 624 (La.1986).
At trial plaintiff produced expert testimony to establish the van's redhibitory vice, thus proving his claim in redhibition. No evidence was introduced, however, concerning plaintiff's attorneys' fees or any attorneys' work records upon which a fee might be calculated. Considering the nature of the proof at trial as representing the work required to prove the claim in redhibition, we find that $25,000 is the highest reasonable amount which adequately compensates plaintiffs attorneys for their work as to the redhibition action only.[1]
In their briefs both parties address appellant's obligation as one of two joint tortfeasors. After the trial had been completed and the judgment had been rendered, appellant's co-tortfeasor, Bohn Ford, paid plaintiff approximately 1.9 million dollars. Plaintiff and Bohn executed a document entitled "Receipt and Release," which plaintiff likens to a pre-trial settlement.
We do not consider the "Receipt and Release" as similar to a pre-judgment settlement. Judgment had been rendered *432 against Bohn on January 24. The "Receipt and Release" was executed on March 30. The time to apply for a suspensive appeal had passed. Bohn was obligated to pay the judgment. Plaintiff could have forced execution of the judgment against Bohn. We consider Bohn's payment, and plaintiff's receipt of payment and release of Bohn and its insurers, as Bohn's satisfaction of the judgment.
In light of our reduction of the awards, plaintiff has received all of the money to which he is entitled. The only remaining issue, which is not before us, is whether Bohn is entitled to reimbursement by appellant in an amount equal to one-half of the amended judgment.
For the reasons provided, we amend the judgment to reduce the amount of the award for plaintiff's damages to $535,000, and to reduce the amount awarded for plaintiff's attorneys' fees to $25,000. In all other respects, including the awards to original plaintiffs Credell Buckner Dominguez, Tonel Monique Dominguez, and Rahsaanica Ajani Joseph, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] We have questioned ourselves whether under La.C.C. Art. 2545 attorneys' fees are limited as part of the repayment of expenses occasioned only by the sale and ultimate return of the product in redhibition, or whether attorneys' fees are also recoverable concerning the bad faith seller's liability to the buyer in damages. We have found no case which addresses this issue. Because the parties have not raised it, we do not address it. We have based our award upon consideration of the work of plaintiff's attorneys represented by a 20 volume record which includes the transcript of the 10 days of trial.