MOTION TO DISMISS
KING, Judge.
The mover-appellee, Sikorsky Aircraft Division, United Technologies Corporation (hereinafter Sikorsky), moves to dismiss *204 the appeal taken by plaintiffs-appellants, Petroleum Helicopters and Peoples Insurance Company of China on two grounds. Sikorsky argues that the appellants have been fully satisfied as to all damages, therefore the appellants have no right to recover from Sikorsky and, secondly, that appellant’s appeal was not timely filed.
This suit arises from the crash of a helicopter. Plaintiffs filed suit against the manufacturer of the helicopter (Sikorsky) and the manufacturer of the engines, General Motors Corporation, Allison Gas Turbine Division, (hereinafter Allison), seeking recovery of worker’s compensation benefits and other related payments resulting from the death of the pilot, as well as the value of the aircraft.
During the course of the litigation the trial court ruled that PHI did not have a cause of action in tort or strict liability against the manufacturer of the helicopter, Sikorsky, and the case proceeded to trial on the basis of express contractual warranty claims against Sikorsky. The jury rendered verdict finding Allison negligent and finding no liability on the part of Sikorsky for breach of warranty. The jury assessed damages at $800,000. Judgment was entered on August 23, 1988. On August 30, 1988 a Motion for Amendment of Judgment, Additur, Judgment Notwithstanding the Verdict, or in the Alternative, New Trial on the Issue of Damages was filed. On November 19, 1988 the trial court granted an additur in the amount of $1.1 million dollars, and denied the Motion for New Trial. On January 6, 1989, the plaintiffs filed their motion for devolutive appeal. An order for appeal was signed on January 9, 1989. On January 17, 1989 plaintiffs executed a receipt and release with Allison acknowledging payment of one million four hundred thousand dollars. The payment represented a settlement and compromise between the plaintiffs and Allison and expressly reserved all rights as against Sikorsky. On January 20, 1989 a Satisfaction of Judgment was filed into the record by plaintiffs. The Satisfaction of Judgment stated that the judgment in favor of plaintiffs against Allison had been paid.
On February 6, 1989 the plaintiffs filed into the mortgage records an Act of Cancellation of Judgment and Judicial Mortgage. This document stated that the judgment against Allison had been paid and completely satisfied.
Based upon these documents evidencing plaintiffs’ settlement with Allison, Sikorsky filed the Motion to Dismiss Appeal. Sikorsky initially argues that the payment of $1.4 million fully satisfied the judgment, therefore plaintiffs no longer have a right to recover against Sikorsky. However, we find that the $1.4 million dollar settlement agreement between Allison and plaintiffs was intended to confect a “transaction or compromise” and not a “satisfaction of the judgment” as alleged by Sikorsky.
In Joseph v. Ford Motor Company, 509 So.2d 1 (La.1987) the Supreme Court was confronted with a similar situation. Plaintiffs brought an action in redhibition and an action in tort. After a trial on the merits, the jury found Ford Motor Company and Bohn Ford, Inc. liable in both redhi-bition and tort. The judgment at the time of the award was worth in excess of $2.6 million.
Plaintiffs settled their claims against Bohn Ford, Inc. and its insurers for $1,976.575.05 and specifically reserved their rights against Ford Motor Company. Ford Motor appealed to the Court of Appeal which reversed the decision of the trial court. The Supreme Court granted writs and determined that plaintiffs had met their burden of proof and remanded to the Court of Appeal for consideration of the award of damages.
On remand the Court of Appeal found that the jury’s awards had been excessive, and reduced the awards to approximately $610,000. The Court of Appeal also held that the settlement agreement between plaintiffs and Bohn was a satisfaction of the judgment and that, considering the reduction of the awards, plaintiffs had received all the money to which they were entitled. Plaintiffs again sought writs to the Supreme Court.
*205 In reversing the appellate court decision the Supreme Court stated:
[1] The settlement agreement between Bohn and plaintiffs, entitled “Receipt and Release,” is evidence that plaintiffs and Bohn intended to confect a “transaction or compromise.” C.C. 3071 defines “transaction or compromise” as “an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.” For a payment of $1,976,575.05 plaintiffs released Bohn from its liability under the $2.6 million trial court judgment. In doing so Bohn limited its exposure for the balance of the judgment if Ford should be exonerated from liability on appeal, and plaintiffs eliminated their risk that Bohn’s liability would be reduced. No other cause or consideration is necessary for a valid transaction or compromise. Since plaintiffs and Bohn fulfilled the conditions of C.C. 3071, this agreement was clearly a transaction or compromise and not a “satisfaction of the judgment” as stated by the court of appeal.
[2, 3] Ford was not released by the agreement and remains liable because plaintiffs expressly reserved their rights against it. C.C. 2203.4 An obligee’s release of a joint tortfeasor reduces the amount recoverable against the remaining tortfeasors by the amount of the virile (pro rata) share of the one released, since the plaintiff, in releasing a joint tortfeasor, has prejudiced the remaining tortfeasors by depriving them of their right of contribution from the one so released. Wall v. American Employers Insurance Co., 386 So.2d 79, 82 (La.1980); Canter v. Koehring Co., 283 So.2d 716, 727-28 (La.1973); Harvey v. Travelers Insurance Co., 163 So.2d 915, 920-22 (La.App. 3 Cir.1964). See also C.C. 1803 (1985),5 which codified the Harvey rule. Ford is thus entitled to a reduction in the amount recoverable against it; consequently, plaintiffs’ award of $610,000 should be reduced by 50%.
[4] We reject the court of appeal holding and Ford’s argument that since the damage award rendered in favor of plaintiffs was less than the $1,976,575.05 already obtained in the compromise with Bohn, plaintiffs’ claims against Ford had already been satisfied. The amount for which plaintiffs and Bohn compromised is irrelevant to the Harvey rule. The damage award against the remaining tortfeasors is reduced by the share of the settling joint tortfeasor regardless of the amount a settling tortfeasor actually pays to compromise the plaintiff’s claim. If plaintiffs had compromised their claims against Bohn for less, Ford would still be entitled to a 50% reduction of the judgment of the court of appeal.
(Footnotes omitted) Joseph v. Ford Motor Company, 509 So.2d 1, at page 3 (La.1987).
In the present case Sikorsky was not released by the settlement agreement, and the plaintiffs expressly reversed their rights against Sikorsky. Since we determine that there was not a satisfaction of the entire judgment, Sikorsky may be found liable as a joint tortfeasor for their share of the award under Joseph v. Ford Motor Company, supra.
Additionally, Sikorsky argues that the appeal was untimely. Judgment was rendered on August 23, 1988. A Motion for Amendment of Judgment, Additur, Judgment Notwithstanding the Verdict, or in the Alternative New Trial was filed on August 30, 1988. The trial court granted the additur and denied the Motion for New Trial on November 17, 1988. On January 6, 1989 the plaintiffs filed their motion for devolutive appeal.
C.C.P. art. 2087 states as follows:
Art. 2087. Delay for taking devolutive appeal
A. Except as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of:
*206 (1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely;
(2) The court's refusal to grant a timely application for a new trial, if the applicant is not entitled to" notice of such refusal under Article 1914; or
(3) The date of the mailing of notice of the court’s refusal to grant a timely application for a new trial, if the applicant is entitled to such notice under Article 1914.
B. When a devolutive appeal has been taken timely, an appellee who seeks to have the judgment appealed from modified, revised, or reversed as to any party may take a devolutive appeal therefrom within the delays allowed in Paragraph A of this Article or within ten days of the mailing by the clerk of the notice of the first devolutive appeal in the case, whichever is later.
C. When one or more parties file post-judgment motions, the delay periods specified herein shall commence for all parties at the time they commence for the party whose post-judgment motion is last to be acted upon by the trial court.
The post judgment motion for new trial filed by plaintiffs had the effect of suspending the plaintiffs’ delays for filing their Motion for Appeal until sixty days after the denial of plaintiffs’ application for new trial. C.C.P. art. 2087. The plaintiffs’ Motion for Devolutive Appeal was timely filed within the sixty day period.
Plaintiff-respondent, in its brief filed in opposition to Sikorsky’s Motion To Dismiss The Appeal, seeks sanctions, including costs and attorneys fees, for what they allege is a frivolous Motion to Dismiss filed by Sikorsky. Sanctions can only be imposed on motion of a party and after a hearing. La.C.C.P. Arts. 863(D) and 863(E). An application for sanctions in a brief is not sufficient. For this reason, plaintiffs-appellants request for sanctions will be denied.
For these reasons, Sikorsky’s Motion to Dismiss Appeal is hereby denied.
MOTION DENIED.